## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

**DAVID IVEY,**

      Plaintiff,

v.

**AUDRAIN COUNTY, et al**

      Defendants.

Cause No.: 2:17-CV-00082-CDP

**DELIBERATE INDIFFERENCE
WRONGFUL DEATH
AND MEDICAL NEGLIGENCE**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S RESPONSE TO DEFENDANTS AUDRAIN COUNTY, NATHANAEL ATKINSON, RICHARD WHITE, AND NICHOLAS JENSEN'S MOTION FOR SUMMARY JUDGMENT

Defendants' Motion for Summary Judgment [Doc. # 82] must be denied because the Defendant Officers observed Mark Ivey's serious medical needs but did nothing to get him the medical care he required. And this was all as a result of the policies and training of Audrain County.

The Officers all knew Mark Ivey vomited multiple times, defecated himself, suffered a seizure and had become unresponsive almost 24 hours before he died. ***Plaintiff's Statement of Additional Material Facts in Dispute*** ("SOMF")[1] ¶¶ 1-6.

Officer White documented all of this in his report:

> After the cell was cleaned Ivey was placed back in R-6 and I continued to monitor him on the camera system. At approximately 0552 hours Ivey vomited on the floor again, while I was watching him on camera he appeared to be having seizure like symptoms, his body was stiff and he started to slide off the bench. I turned on the intercom and asked Ivey if he was ok. Ivey would not answer me. I directed Officer Atkinson and Deputy Jensen to go into R-6 and physically check on Ivey. I continued to monitor the camera and listen to the intercom system, when Officer Atkinson went into the cell he approached Ivey and asked if he needed medical attention Ivey said no. Deputy Jensen escorted Ivey back booking again so they could clean the cell. Deputy Jensen via radio advised that Ivey had defecated himself and needed a shower.

---

[1] Plaintiff's Statement of Additional Material Facts in Dispute, as well as his Responses to Defendants' Statement of Uncontroverted Material Facts, are contained in the same document and filed concurrently with this Response. Plaintiff's Statement of Additional Material Facts in Dispute begins on p. 6 of that document.

SOMF ¶¶ 1-6 (Exhibit 15).

Instead of doing what any reasonable person would have done and called 911, the Officers failed to get Mark medical attention. SOMF ¶ 50, 53. They didn't call 911. SOMF ¶ 50, 53. They didn't call the nurse. SOMF ¶ 12. They didn't call the doctor. SOMF ¶ 14. Inexplicably, they never spoke to medical personnel at the Jail about Mark Ivey at any time. SOMF ¶¶ 10-15. The site Nurse testified:

```
6        Q.      Did you ever personally speak to
7    Officers White, Atkinson or Jensen about Mark Ivey?
8        A.      I don't think so, no.
```

....

```
11       Q.      Were you ever made aware by anyone that
12   Mr. Ivey had any sort of convulsions or seizures?
13       A.      No.
14       Q.      Okay.  And I mean by anybody at any time.
15       A.      No.
16       Q.      Is that something that you would have wanted
17   to know?
18       A.      Definitely.
```

SOMF ¶ 10, 12. The site Doctor testified:

```
11       Q.  Did you ever speak to any correctional officers
12   about Mr. Ivey before his death?
13       A.  Not that I recall.
```

....

```
4        Q.  Did anyone ever tell you that Mark Ivey had a
5   seizure his first night at the Audrain County jail?
6        A.  No.
```

SOMF ¶ 14, 22. No reasonable person, medically trained or otherwise, would have seen the objectively serious medical needs that the Officers witnessed and failed to act. In fact, the Officers were ordered by their superior to tell the nurse about Mark Ivey's condition when she arrived, but failed to even speak to her. SOMF ¶ 51. If they simply did what any rational person would have done and called 911 to get Mark to the hospital, he would have gotten the care that he needed for the problems that he was having. SOMF ¶¶ 20-22, 48. Failing to do so is deliberate indifference. At the very least, the Officers needed to call the on-call doctor and inform her of what was going on. Failing to do both is certainly deliberate indifference. Finally, failing to even tell the nurse or doctor the next day—despite a direct order from their superior—exemplifies the "highly culpable state of mind approaching actual intent" that defines the classic deliberate indifference case. Put simply, the Officers should have called 911, should have called the on-call doctor, and should have told the nurse. They did ***nothing*** to get Mark medical treatment.

As shocking as the Officers' indifference to Mark's problems was, that indifference goes hand in hand with Audrain County's unconstitutional policies and training. For example, Officer White testified the County's policy and training is that you don't have to alert medical personnel unless a detainee has a ***second*** seizure. SOMF ¶ 35. That's preposterous. If a person has a seizure, you get that person medical attention. You don't wait and see if it happens again. Of course that policy would lead to the deprivation of constitutional rights.

Mark didn't get the care he needed because the Officers failed to get him to the hospital. All of Mark's symptoms were readily treatable in the hospital. SOMF ¶ 52. In other words, if the

Officers would have just called 911 when it was apparent that Mark needed help, he would not have died. Their deliberate indifference to his medical needs directly caused his death.

There are two sets of Defendants in this case: the County Defendants (the subject of this response) and the Medical Defendants. Each set of Defendants point the finger at the other. So Plaintiff's case against the County Defendants is made largely from the testimony of the Medical Defendants, and vice versa. At trial, the question won't be if the Defendants were deliberately indifferent, but rather which set of Defendants was deliberately indifferent. Regardless of who is to be believed at trial, there is a dispute of fact about whether Mark Ivey's serious medical needs were ever relayed to medical personnel. Because both prongs of Plaintiff's prima facie case for deliberate indifference are questions of fact, summary judgment is inappropriate.

## I.    STATEMENT OF FACTS

Mark Ivey was arrested in Audrain County and treated at a local hospital on July 20, 2016. The hospital sent him to the Audrain County Jail with a fit for confinement report that stated he needed his inhaler. SOMF ¶ 46. When Mark arrived, the Jail filled out an intake questionnaire, revealing Mark had asthma, was prescribed an inhaler, and had been hospitalized for breathing problems recently. SOMF ¶ 47.

On each of the two nights that Mark Ivey was in Audrain County Jail, Officers Atkinson, White and Jensen (the "Officers") were on duty. The first night, the Officers observed Mark Ivey vomiting, defecating on himself, and even having a seizure. SOMF ¶¶ 1-6. Although the Officers were trained to contact medical personnel when they witnessed a medical situation like Mark's, each of them failed to contact the nurse or doctor. SOMF ¶¶ 7-15. Worst of all, the Officers knew their actions were unlawful, because they had been given a training manual that states "deliberate

indifference includes knowing someone is ill or needs medical attention and not addressing it." SOMF ¶ 16.

The Officers' failure to speak to medical personnel directly caused Mark's death. The doctor has to be told of all the symptoms a detainee is going through by the nurse or the correctional officers in order to place the detainee on the appropriate level of observation. SOMF ¶ 18. The doctor testified that she would have placed Mark on medical observation or sent him to the hospital if she had been informed of his serious symptoms. SOMF ¶ 19-22. The nurse stated that she expected Mark to be on medical observation the night he died, but the Officers did not watch him any closer than any other detainee. SOMF ¶¶ 23-24. Instead of being cared for in a hospital setting, Mark died the next night alone in his jail cell. SOMF ¶¶ 25-26.

The County's policies and training also led to Mark's death. To begin with, the County trains its officers that they don't always have to follow the County's policies. SOMF ¶ 27. The County admits it is responsible for properly training its officers. SOMF ¶ 37. The County failed to train the Officers in several important respects, including: 1) how to decide when to send a detainee to the hospital; 2) how to recognize or care for an inmate going through withdrawal; 3) to inform medical personnel if a detainee vomits or defecates on himself; and 4) to recognize when a detainee is experiencing an asthma attack. SOMF ¶¶ 28-29, 31, 33. But the County admits its Officers should have been so trained. SOMF ¶¶ 30, 32, 34, 36.

The County's policies are just as problematic. Officer White testified that the County's policy is that officers do not have to notify medical personnel unless a detainee has more than one seizure. SOMF ¶ 35. And the County does not allow any detainee to have an asthma inhaler on their person, even for emergencies. SOMF ¶ 39. The County's policy is that detainees do not have to undergo a health assessment for up to two weeks after they come to the jail. Finally, the County's

5

policies state that detainees like Mark can be kept in the jail because they can be put under constant observation. SOMF ¶¶ 41-43. However, the Sheriff admitted that it is not possible to put a detainee under constant observation in the Audrain County Jail. SOMF ¶ 44. Detainees that are that bad off have to be taken to the hospital. SOMF ¶ 45.

Summary judgment is not appropriate because there is a dispute of several material facts.

## II.    SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts include anything that "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In other words, there must be ***nothing*** left for the jury to decide with respect to the matters presented in the motion for summary judgment." *Hartford Acc. & Indem. Co. v. Stauffer Chem. Co.,* 741 F.2d 1142, 1144 (8th Cir. 1984) (emphasis added). "Summary judgment is precluded when there are specific facts showing that there is a genuine issue for trial." *A.J. ex rel. Dixon v. Tanksley*, 822 F.3d 437, 441 (8th Cir. 2016) (quotations omitted).

"Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established its right to judgment with such clarity as not to give rise to controversy." *Williams v. Ford Motor Co.*, 2013 WL 3874751, at *2 (E.D. Mo. July 25, 2013), citing *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) ("We recognize that summary judgment is a drastic remedy and must be exercised with extreme care to prevent

taking genuine issues of fact away from juries."). "Summary judgment is justified only when, viewing the facts and inferences that may be derived therefrom in the light most favorable to the nonmoving party, the court is convinced that there is no evidence to sustain a recovery under any circumstances." *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983), *abrogated on other grounds by Wyatt v. Cole*, 504 U.S. 158 (1992).

So, from the beginning, Defendants have a tough hill to climb. Their Motion comes nowhere near satisfying their heavy burden. It must be denied.

## III.    ARGUMENT

Mark Ivey suffered from several objectively serious medical needs while in the Audrain County Jail, including vomiting, incontinence of feces, a seizure, and asthma. Each of the Officers personally saw these conditions or were exposed to information of their existence. Yet none of the Officers even spoke to medical personnel about Mark, much less did they attempt to get him the medical treatment he so obviously needed. Further, the County's inadequate training and unconstitutional policies were the moving force behind Mark's death.

### A.  The Officers Observed Mark's Objectively Serious Medical Needs but Failed to Notify Medical Personnel

To prevail on his deliberate indifference claims, Plaintiff needs to show: "(1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). Importantly, "[w]hether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." *Id.*

Further, "[q]ualified immunity shields government officials from suit under 42 U.S.C. § 1983 if they acted reasonably and in a manner that did not violate clearly established law." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

### i.    *Obvious medical needs*

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 914.

It's clear that Mark Ivey was suffering from several obvious medical needs. His medical condition was so grave that even a layperson would have understood Mark was experiencing a life-threatening medical emergency. His vomiting, incontinence and a seizure were far more obvious than in other Eighth Circuit cases finding this element was met. *See Schaub*, 638 F.3d at 915 ("[t]he district court found that his oozing sores and the smell of infection made his serious medical needs "more than obvious" to a layperson."). And his asthma—the other condition that contributed to his demise—had just been treated and diagnosed by the doctors at the hospital. SOMF ¶ 46. So all of the conditions that Mark suffered from were objectively serious.

### ii.    *Deliberate Indifference*

"An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Id.* at 915. "Particularly when considering such fact specific issues, the facts must be interpreted most favorably to [the plaintiff], the nonmoving party." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "[W]here the evidence shows that a substantial risk to the inmate's health was well-documented and the circumstances suggest that the defendant-official was exposed to information about the risk and thus must have known about it, then such

evidence is sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Schaub*, 638 F.3d at 916.

The Officers all admit they saw Mark vomit multiple times and defecate on himself. Officer White admits he saw Mark have a seizure. And Officers Atkinson and Jensen were both sent to check on Mark **because** Officer White saw him have a seizure. Under those circumstances, Officers Atkinson and Jensen must have known about the seizure too. *Schaub*, 638 F.3d at 916. ("[W]here the evidence shows that a substantial risk to the inmate's health was well-documented and the circumstances suggest that the defendant-official was exposed to information about the risk and thus must have known about it, then such evidence is sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."). Finally, the Officers are charged with knowledge of Mark's asthma, because he was admitted with a fit for confinement report that says he needed his inhaler, and his intake questionnaire revealed he had asthma, was prescribed an inhaler, and had been hospitalized for breathing problems recently. SOMF ¶¶ 46-47. In short, there is overwhelming evidence that the Officers had subjective knowledge of Mark Ivey's serious medical needs. And this element is an issue of fact. So, at the very least, there are enough facts from which a reasonable jury could find the subjective knowledge element is met.

The evidence of deliberate disregard for Mark's needs is just as devastating. It is undisputed that the Officers never called 911. They never called the on-call doctor either. And the nurse and doctor say the Officers never even **spoke** to them about Mark Ivey, much less tried to get Mark the care that he needed. And the law required the Officers to get him medical care. Simply reporting to non-medical supervisors does not preclude liability for deliberate indifference to medical needs. *Gordon*, 454 F.3d at 862-63 (guard "eventually reported [plaintiff's] statements [supervisor], but after [plaintiff's] complaints did nothing other than observe him."). And, under the circumstances,

the Officers cannot blame the medical defendants for failing to treat Mark appropriately. A state official cannot reasonably rely on the opinion of medical staff if they fail to inform medical staff of the inmate's medical condition. *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). In other words, it is "unreasonable to rely on a medical assessment grounded on incorrect information." *Id.* at 981. So, despite the Officers' assertions that they told medical about Mark, the medical Defendants' testimony that the Officers never even spoke to them after seeing Mark's condition creates a dispute of material fact that precludes summary judgment on deliberate indifference.

### iii.    *Qualified Immunity*

"Qualified immunity would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...." *Gordon*, 454 F.3d at 862 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

The guards also claim qualified immunity for their actions. However, the Eighth Circuit has made clear that officials are "only protected by qualified immunity if they could reasonably believe that their response was not deliberately indifferent." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006). "A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress." *Id.* But not only would a reasonable officer know that it is unlawful, the actual Defendant Officers knew it in this case. The officers were given a training manual that states "deliberate indifference includes knowing someone is ill or needs medical attention and not addressing it." SOMF ¶ 16. And that's exactly what these Officers did. They never called 911. They never called the on-call doctor. And they didn't even speak to medical the next day.

10

The failure to say a word about a seizure is particularly important, because federal precedent had already clearly established that prison officials cannot ignore seizures. *See Gaxiola v. Sayre*, 667 F. App'x 598 (9th Cir. 2016) (prison nurse witnessed seizure but "disregard[ed] [this] excessive risk" …by delaying the provision of adequate treatment or testing."). At the risk of stating the obvious, any reasonable officer would have talked to medical after observing Mark's serious medical needs. The Officers did not (SOMF ¶¶ 10-15), so they are not protected by qualified immunity.

It is also relevant to qualified immunity whether the guards had "screening information available" to them. *Gordon*, 454 F.3d at 864. In this case, a screening questionnaire was available in Mark's file from the time he entered the jail. That questionnaire revealed Mark had asthma, was prescribed an inhaler, and was hospitalized for breathing problems recently. SOMF ¶ 47. "A reasonable officer would do more than dismiss [decedent's] complaints given the seriousness of his symptoms and the screening information available." *Id.*

Because the guards failed to mention Mark's serious symptoms to medical personnel, despite seeing his condition first hand and having screening information available, the guards cannot prevail on qualified immunity.

### iv.    Causation

The Defendants briefly attack the causation element of Plaintiff's case. But it's clear that if the Officers had done what any rational person would have done, and called 911 when they saw a detainee vomit, defecate himself, have a seizure and become unresponsive, Mark would have been taken to the hospital where his needs could have been addressed. At the very least, if they simply told medical personnel about Mark's condition, the doctor would have sent him to the hospital to get the care he needed. SOMF ¶¶ 20-22 ("he's beyond what we can take care of in the

11

jail and I need to have him evaluated elsewhere."). It doesn't take an expert to realize Mark was in trouble and needed to go to the hospital, although Plaintiff's expert does so opine. SOMF ¶ 48.

So while the testimony in this case points to several contributing causes of death, including asthma (SOMF ¶ 26), withdrawal symptoms (SOMF ¶ 26), a seizure (SOMF ¶ 49), and hypokalemia (SOMF ¶ 49), it doesn't really matter because all of these conditions are readily treatable in the hospital setting. If the Officers weren't deliberately indifferent, and got Mark to the hospital when it was obvious that he needed medical attention, Mark would have gotten all the care he needed. The Officers' failure to get him care directly caused his death.

## B. The County's Policies and Training Were the Moving Force Behind the Officers' Unconstitutional Actions

Audrain County has liability separate and apart from the Officers. Its policies and training suggest a clear disregard for the medical needs of its detainees. As explained in Section III.A, *supra*, the Officers were deliberately indifferent to Mark's serious medical needs, depriving him of his constitutional rights. The policies and training of Audrain County led to that deprivation.

### i.    *Deliberately Indifferent Policies*

"Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. Cty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "To establish the existence of a policy, [the plaintiff] must point to a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. *Id.* The plaintiff "must also show that the policy was unconstitutional and that it was "the moving force" behind the harm that he suffered." *Id.*

Easily the most egregious of the County's policies is the seizure policy. Officer White, the individual who admits he saw Mark suffer a seizure the first night he was in jail, testified that Audrain County's policy is that officers do not have to notify medical personnel unless a detainee

has more than one seizure. SOMF ¶ 35. Such an obviously inadequate policy was a moving force behind the harm Mark suffered because, had the Officers told the doctor about Mark's seizure, she would have sent him to the hospital. SOMF ¶¶ 20-22 ("So the seizure, I mean, if they told me that he had a seizure, maybe that would have changed things. I didn't know that he had a seizure.").

The County's policies relating to the observation of sick prisoners provides an alternate reason that summary judgment must be denied as to the County. The County's written policies allow officers and medical personnel to keep detainees in the jail that are at risk for progression to more severe levels of withdrawal or who are withdrawing from a depressant—like Mark—because they can be put "under constant observation." SOMF ¶¶ 41-43. These policies were a moving force behind Mark's death because, as the Sheriff admits, it is not possible to put a detainee under constant observation inside the Audrain County Jail. SOMF ¶ 44. Rather, if a detainee needs to be under constant observation, the detainee has to be taken to the hospital. SOMF ¶ 45. Put simply, the County's policies concerning constant observation allow detainees that should be in the hospital to be kept inside the jail under the false premise that there can be constant observation within the jail itself. Based on Mark's condition and the reality that detainees cannot be put under constant observation, Mark should have been sent to the hospital where he could have been safely monitored and actually treated.

A third avenue of liability is the County's policies that relate to Mark's treatment—or, rather, his lack of treatment—for asthma. First, the undisputed official policy of Audrain County is that detainees are not allowed to possess their own inhaler. SOMF ¶ 39. Second, Nurse Hildebrand testified that one of the reasons she did not assess Mark Ivey for asthma is because it is Audrain County's policy that a health assessment does not need to be performed on detainees for up two weeks after they enter the jail. ¶ 40. Both policies were moving forces behind the harm

13

that Mark Ivey suffered, because he ended up dying from a preventable asthma attack. SOMF ¶ 26.

Mark did not have to die in the Audrain County Jail. But at least three separate policies of the Jail ensured that he did. Any one of the above mentioned policies is enough to deny summary judgment.

### ii.    *Deliberately Indifferent Training*

Defendants claim the record contains no evidence to support a failure to train claim. To the contrary, the County's failure to train its correctional officers led to Mark's death.

Audrain County relied on Advanced Correctional Health Care, through its nurse, to train the officers about medical issues. SOMF ¶ 30. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. at 103, 97 S.Ct. at 290). "Furthermore where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." *Id.* So the fact that Audrain County relies on Advanced Correctional Healthcare to provide medical care to detainees does not immunize it from suit. The County conceded this point at its deposition, admitting it is responsible for making sure its correctional officers are properly trained. SOMF ¶ 37.

The County failed to train the Officers: 1) how to decide when to send a detainee to the hospital; 2) how to recognize or care for an inmate going through withdrawal; 3) to inform medical personnel if a detainee vomits or defecates on himself; and 4) to recognize when a detainee is experiencing an asthma attack. SOMF ¶¶ 28-29, 31, 33. But the County admits its Officers should have been so trained. SOMF ¶¶ 30, 32, 34, 36. This abysmal lack of training was bound to result

in officers failing to recognize the need for medical care and act on that need. In this case, the Officers did not ask to send Mark to the hospital, did not recognize that he was going through withdrawals, failed to notify medical, and failed to recognize Mark's asthma attack. Together, these failures led to Mark's death from asthma and withdrawal symptoms.

The County's training was so inadequate that a deprivation of rights was virtually guaranteed. The utter lack of training for the Officers provides yet another avenue for Plaintiff to prevail at trial. Summary judgment must be denied.

## CONCLUSION

Regardless of who is to be believed at trial, there is a dispute of fact about whether Mark Ivey's serious medical needs were ever relayed to medical personnel. Because both prongs of Plaintiff's prima facie case for deliberate indifference are questions of fact, summary judgment is inappropriate. Further, the deliberate indifference of the Officers was set into motion by the unconstitutional policies and training of Audrain County. The Defendants' Motion must be denied.

Respectfully submitted,

**THE SIMON LAW FIRM, P.C**.

*/s/ Patrick R. McPhail*
John G. Simon, #35231
Kevin M. Carnie, Jr., #60979
Patrick R. McPhail, #70242
800 Market Street, Suite 1700
St. Louis, MO 63101
Phone: 314-241-2929
Fax: 314-241-2029
jsimon@simonlawpc.com
kcarnie@simonlawpc.com
pmcphail@simonlawpc.com
*Attorneys for Plaintiff*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of April, 2019, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Patrick R. McPhail*
Patrick. R. McPhail