# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

DAVID IVEY, DDS,

PLAINTIFF

**PLAINTIFF'S
EXHIBIT
1**

V.

AUDRAIN COUNTY,
STEPHANIE HILDEBRAND, LPN
SHAWNDRA BROWN-FOOTE, MD et. al. .
DEFENDANTS

CAUSE NUMBER 2:17-CV-00082-CDP

DAVID M. MATHIS, MD, CCHP-P, FAAFP
CORRECTIONAL MEDICAL EXPERT REPORT
SEPTEMBER 14, 2018

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

## TABLE OF CONTENTS

INTRODUCTION........................................................................................ 1

QUALIFICATIONS AND BACKGROUND ................................................ 1

LIST OF MATERIALS .............................................................................. 4

    MEDICAL RECORDS........................................................................................ 4

    DEPOSITION TRANSCRIPTS/EXHIBITS........................................................ 4

    PLEADINGS AND WRITTEN DISCOVERY..................................................... 5

    LITERATURE AND REFERENCES.................................................................. 5

OVERVIEW............................................................................................... 6

    DEFENDANTS ................................................................................................. 6

BACKGROUND........................................................................................ 7

    J-A-01 ACCESS TO CARE................................................................................ 8

    J-A-02 RESPONSIBLE HEALTH AUTHORITY................................................ 8

    J-A-10 DEATH REVIEW ................................................................................... 8

    J-C-01 CREDENTIALS ...................................................................................... 8

    J-D-02 MEDICATION SERVICES ..................................................................... 8

    J-E-02 RECEIVING SCREENING ..................................................................... 8

    J-E-11 NURSING ASSESSMENT PROTOCOLS ............................................. 8

    J-G-06 INTOXICATION AND WITHDRAWAL .................................................. 8

DETAILED SUMMARY OF EVENTS ...................................................... 8

    ARREST: July 20, 2016, 09:49, Wednesday .................................................. 8

    AUDRAIN EMERGENCY ROOM, MEXICO, MISSOURI .......................................... 9

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

BOOKING, DETENTION AND DEATH AT THE AUDRAIN COUNTY JAIL ........... 12

OPINIONS ................................................................................................. 16

COUNT ONE: STANDARD OF CARE, NEGLIGENCE, WRONGFUL DEATH ..... 16

COUNT TWO: WITHHOLDING AND DENIAL OF CARE, DELIBERATE

INDIFFERENCE .......................................................................................... 18

COUNT THREE: CAUSATION ...................................................................... 23

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

## 1   INTRODUCTION

2   Kevin Carnie, Esq., of The Simon Law Firm, filed Missouri State and Federal claims on

3   behalf of David Ivey regarding the actions of the Defendants below. Kevin Carnie, Esq. retained

4   me and requested that I review files included in the List of Materials related to David's son, Mark

5   Ivey. Kevin Carnie, Esq. tasked me with providing Correctional Medical Opinions and

6   completing a Report for the United States District Court, Eastern District of Missouri, Northern

7   Division. Kevin Carnie, Esq. requested that my Report address the Missouri State Claims as

8   well as the Federal Civil Rights claims discussed below.

9   Kevin Carnie, Esq. of The Simon Law Firm, PLC is compensating me at a rate of $600

10   per hour for the time I spend on this case. I agree to deposition and trial appearances if needed.

11   Attached are my current Curriculum Vitae and Testifying History.

## 12   QUALIFICATIONS AND BACKGROUND

13   I earned my medical degree from Wayne State University School of Medicine in 1976. I

14   have been repeatedly and continuously board-certified by the American Academy of Family

15   Practice since 1979. I previously held medical licenses in Virginia, Maryland, and Delaware and

16   was in good standing in those states for the entire licensing terms. I currently hold a California

17   medical license and am in good standing.

18   I have over 20 years of experience in Corrections as a provider and medical director. In

19   2008, I completed the prerequisites to sit for the National Commission for Correctional Health

20   Care (NCCHC) Certified Correctional Healthcare Professional (CCHP) examination, passed the

21   exam and earned recognition as a CCHP. <sup>CCHP</sup> The NCCHC publishes Standards for Health

22   Services in Prisons, Standards for Health Services in Jails, Standards for Health Services in

23   Juvenile Detention and Confinement Facilities and Correctional Health Care: Guidelines for the

24   Management of an Adequate Delivery System. My examination covered knowledge of material

25   from these sources as well my background and experience in Corrections. In 2015, I passed the

26   more specialized physician examination, and am now recognized as a CCHP Physician (CCHP-

27   P). <sup>CCHP-P</sup>

28   I worked for the Virginia Department of Corrections from 1981 to 1991, visiting a prison road

29   camp for rounds twice weekly, and providing clinical care to inmates in my private office, the

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   emergency room, and the hospital. I was continuously on call for issues that arose regarding

2   these inmates either at the camp, emergency room, hospital or at specialty offices.

3      In the first part of 2006, I worked as a registry physician for the California Department of

4   Corrections and Rehabilitation (CDCR). In December 2006, Correctional Medical Services

5   (CMS) hired me as Medical Director for Eastern Correctional Institution (ECI), a 3,500-inmate

6   prison in Westover, Maryland in the Eastern Region. CMS was a national prison healthcare

7   company contracted to provide medical services to the Maryland Department of Public Safety &

8   Correctional Services (DPSCS). At ECI my responsibilities included caring for seriously ill

9   inmates in a 15-bed infirmary and coordinating HIV and hepatitis C treatments. I directed

10  utilization management for off-site inmate medical consultations and imaging including

11  overseeing inmate hospitalizations. I supervised other physicians, physician assistants and

12  nurse practitioners. Asthma was a common acute and chronic condition. I had daily interactions

13  with Custody, triaging inmate care based on Custody questions, observations, and incident

14  reports. I worked directly with Wexford Health Sources, Inc., employed by DPSCS to oversee

15  the utilization management aspects of the Maryland contract at ECI. As Medical Director, I

16  represented the medical staff in administrative discussions about correctional medical policies

17  and procedures.

18     In preparation for the accreditation of ECI by the American Correctional Association (ACA), I

19  reviewed and revised medical policies and procedures and supervised updating of clinical

20  equipment and facilities. I also worked directly with other Maryland Prison Medical Directors

21  and the Executive Director of Clinical Services, Department of Public Safety and Correctional

22  Services, Maryland, on state policies regarding inmate medical treatment and infectious disease

23  protocols.

24     When the CMS contract with Maryland expired, I was hired by the California Department of

25  Corrections & Rehabilitation (CDCR) <sup>CDCR</sup> as a Physician and Surgeon for the California Medical

26  Facility (CMF). <sup>CMF</sup> CMF provides medical and psychiatric healthcare to 2,500 male inmates. It

27  includes a Correctional Treatment Center (CTC), Outpatient Housing Unit (OHU), Mental Health

28  Crisis Bed (MHCB) unit, Vacaville Psychiatric Program (VPP) units, and a 17-bed Hospice, in

29  addition to general inmate housing.

30     At CMF, I currently have two current primary responsibilities:

31     1. As a hospice physician, I screen, admit, and treat terminally ill inmates coming to CMF

32        for palliative, end-of-life care.

2

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**
**Cause: 2:17 – CV – 00082 – CDP**
**IVEY v. AUDRAIN COUNTY**
**MATHIS EXPERT REPORT 09/14/2018**

1  2. I am an inpatient utilization management coordinator directing bed utilization for inmates
2     coming to our medical beds from other CDCR prisons or from outside hospitals
3     throughout the state.

4  My past and occasional responsibilities at CMF include:

5  1. Primary Care Physician for approximately 40 inmates in the OHU, conducting clinic four
6     days a week. In this capacity as well as the other direct patient care contacts I
7     repeatedly treated inmates with acute and chronic asthma.

8  2. Medical consultant to the MHCB, examining all new admissions, coordinating medical
9     care with the provider team and conferring with CMF psychiatrists. Inmates are referred
10    to the MHCB from CDCR prisons throughout California with suicidal thought, self-
11    injurious behavior, suicide attempt, danger to self, danger to others and acute psychosis.

12 3. Primary Care Physician for approximately 500 general population inmates. These
13    inmates are new arrivals at CMF requiring examination and a treatment plan or inmates
14    who had acute or chronic medical issues that I addressed, including asthma.

15 4. Physician for approximately 40 inmates on one floor of the CTC which houses inmates
16    who have medical issues requiring direct nursing support and at least weekly rounding
17    and care.

18 5. During my first five years at CMF I worked an additional 4,000+ hours as Medical Officer
19    of the Day (MOD). MOD is the sole physician in charge of all medical and mental health
20    aspects of the entire prison population during off hours.

21 6. CDCR then eliminated MOD and instituted Physician on Call (POC). Now I am on call
22    for CMF from home several days monthly and come into the institution for mental health
23    admissions, critical patients and deaths during those on call shifts.

24 Throughout my career as a Family Practice Physician, Emergency Room Physician and
25 Correctional Medical Provider I have been called upon to take histories, perform examinations,
26 make diagnoses and offer treatment related to patients with acute and chronic asthma.

27

28

3

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   **LIST OF MATERIALS**

2   During my study of this matter I have had access to the following items:

3                              **MEDICAL RECORDS**

4   • State Police Custody Records:

5   • Advanced Correctional Healthcare Contract

6   • Advanced Correctional Healthcare Letter of Understanding

7   • Audrain County Sheriff's Office Incident Report

8   • Audrain County Jail Records of Mark Andrew Ivey

9   • Audrain County Sheriff's Office & Jail Inmate Handbook

10  • Jail Control Center Activity Logs

11  • Audrain County Jail Medical Records (000268 through 000278)

12  • Missouri State Police Arrest Records (000279 through 000286)

13  • Missouri State Police Arrest Records (000316 through 000324)

14  • Missouri State Highway Patrol, Crime Laboratory Division, Certified Toxicology Report of

15  Mark A. Ivey

16  • Missouri State Highway Patrol Property Record

17  • Audrain County Sheriff's Office Facility Admission Report

18  • Missouri State Highway Patrol Transmittal Slip and Refusal to Submit

19  • One Beacon Insurance Group Policy for Audrain County

20  • Post Mortem Examination of the Body of Mark Ivey with Final Diagnosis by Deiter J. Duff,

21  MD, dated 09/20/16

22  • St. Mary's Hospital Records of Mark Andrew Ivey

23  • ER Records of Mark Ivey

24  • Audrain Ambulance District Records of Mark Ivey

25                    **DEPOSITION TRANSCRIPTS/EXHIBITS**

26  • Deposition of Deborah Ash on 09/07/2018

27  • Deposition of Sheriff Matthew Oller on 08/23/18

28  • Deposition of Nathaniel Atkinson on 08/23/18

29  • Deposition of Richard White on 08/23/18

4

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   • Deposition of Timothy Tanner on 08/23/18

2   • Deposition of Dr. Shawndra Brown-Foote on 08/31/18

3   • Deposition of David Ivey, MD on 08/15/18

4   • Deposition of Stephanie Hildebrand, LPN on 08/08/18

5   • Deposition of Nicholas Jensen on 07/31/18

6                    **PLEADINGS AND WRITTEN DISCOVERY**

7   • Defendant Audrain County's Initial Rule 26(a)(1) Disclosures

8   • Defendant Audrain County's Response to Plaintiff's Interrogatories

9   • Defendant Audrain County's Response to Plaintiff's Request for Production

10  • Defendant Stephanie Hildebrand's Initial Rule 26(a)(1) Disclosures

11  • Complaint (Deliberate Indifference, Wrongful Death, and Medical Negligence), filed 11/27/17

12  • Case Management Order, filed 02/12/18

13  • Amended Complaint (Deliberate Indifference, Wrongful Death, and Medical Negligence),

14  filed 03/12/18

15                    **LITERATURE AND REFERENCES**

16  • NCCHC Standards for Health Services in Jails 2014

17        ○  J – A – 01 ACCESS TO CARE

18        ○  J – A – 02 RESPONSIBLE HEALTH AUTHORITY

19        ○  J – A – 10 DEATH REVIEW

20        ○  J – C – 01 CREDENTIALS

21        ○  J – D – 02 MEDICATION SERVICES

22        ○  J – E – 02 RECEIVING SCREENING

23        ○  J – E – 11 NURSING ASSESSMENT PROTOCOLS

24        ○  J – G – 06 INTOXICATION AND WITHDRAWAL

25  • Missouri Board of Nursing. LPN Scope of Practice[MO LPN Scope of Practice]

26

5

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**
**Cause: 2:17 – CV – 00082 – CDP**
**IVEY v. AUDRAIN COUNTY**
**MATHIS EXPERT REPORT 09/14/2018**

1 # OVERVIEW

2     Mark Ivey was a 31-year-old man who was arrested at the Fast Lane Gas Station and

3 convenience store in Laddonia, Missouri by Missouri State Highway Patrol after receiving a

4 complaint that Mark Ivey had been at the convenience store for nearly an hour, was acting

5 erratically and left his car blocking traffic. Mark Ivey was taken to the Audrain County

6 Emergency Room where he was evaluated, diagnosed with drug intoxication and asthma. Mark

7 Ivey received treatment for asthma. A Fit for Confinement letter was authored and sent to the

8 Audrain County Jail. Stephanie Hildebrand, LPN screened Mark Ivey and interacted with her

9 Responsible Physician, Shawndra Brown-Foote, MD. Mark Ivey received initial treatment for

10 suspected heroin withdrawal. Mark Ivey was not prescribed any treatment for asthma.

11 Approximately 48 hours after his arrival at the Audrain County Jail, Mark Ivey had a cardiac

12 arrest and expired. The cause of his death was asthma.

13 **DEFENDANTS**

14 **Sheriff of Audrain County, Matthew Oller**

15     Sheriff Matthew Oller represents Audrain County in all matters regarding the Audrain

16 County Jail and employees at the Audrain County Jail. Sheriff Matthew Oller employed

17 Advanced Correctional Healthcare, Inc., Stephanie Hildebrand, LPN and Shawndra Brown-

18 Foote, MD.

19

20 **Advanced Correctional Healthcare, Inc.**

21     Advanced Correctional Healthcare, Inc. (ACH) contracted with the Sheriff of Audrain

22 County Jail, Stephanie Hildebrand, LPN and Shawndra Brown-Foote, MD to provide medical

23 services to Audrain County and Mark Ivey at all times during the Mark Ivey detention. ACH

24 contracted with Audrain County Jail to provide NCCHC (National Commission on Correctional

25 Healthcare) Compliance programs specific to the Jail's medical operations. ACH contract p. 4

26 ACH was the Responsible Health Authority NCCHC JAILS J-A-02, ACH contract for the Audrain County Jail.

27 ACH is responsible for the actions of Stephanie Hildebrand, LPN and Shawndra Brown-Foote,

28 MD, as both were employed by ACH. Ash dep pp. 18-19

29

30

31

6

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1 **Shawndra Brown-Foote, MD**

2     Shawndra Brown-Foote, MD was the SITE PHYSICIAN. The Audrain County Jail

3 Contract provided NCCHC (National Commission on Correctional Healthcare) Compliance

4 programs specific to the Jail's medical operations. ACH contract p. 4 As a result of ACH's contract,

5 Shawndra Brown-Foote, MD was also the Responsible Physician ACH contract p. 4, NCCHC J-A-02 at the

6 Audrain County Jail. At all times during the Mark Ivey detention, Shawndra Brown-Foote, MD

7 was responsible by both Missouri regulation and the Advanced Correctional Healthcare, Inc.

8 contract ACH contract for the care provided by Stephanie Hildebrand, LPN. Shawndra Brown-Foote,

9 MD prescribed initial medications for Mark Ivey to treat drug withdrawal but did not prescribe

10 medications, treatment or evaluation for asthma, Mark Ivey's cause of death. Hildebrand dep, Brown-Foote

11 dep

12

13 **Stephanie Hildebrand, LPN**

14     Stephanie Hildebrand, LPN worked at the Audrain County Jail for the 11 years before

15 Mark Ivey's death and was the sole nurse. Stephanie Hildebrand, LPN worked 25 hours weekly

16 and was employed by Advanced Correctional Healthcare, Inc.

17     As an LPN in the state of Missouri Stephanie Hildebrand, LPN was able to perform

18 nursing acts "under the direction of a person licensed by a state regulatory board to prescribe

19 medication treatments…" MO LPN Scope of Practice Stephanie Hildebrand, LPN was not authorized to

20 independently perform nursing care/acts. It was important for Stephanie Hildebrand, LPN to

21 have immediate access, at all times, to Shawndra Brown-Foote, MD, the physician employed by

22 Advanced Correctional Healthcare, Inc. for the Audrain County Jail. MO LPN Scope of Practice

23

24 ## BACKGROUND

25     The ACH contract ACH contract with the Audrain County Jail and the Audrain County Sheriff

26 agreed to provide management services including:

27     • Site-specific Policies and Procedures; Protocols

28     • Cost Containment

29     • NCCHC (National Commission on Correctional Healthcare) Compliance
30       programs specific to the Jail's medical operations.

31

7

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

1    Pertinent NCCHC standards to the Mark Ivey case are from the 2014 NCCHC

2    STANDARDS FOR HEALTH SERVICES IN JAILS:

3

4    **J-A-01 ACCESS TO CARE**

5    **J-A-02 RESPONSIBLE HEALTH AUTHORITY**

6    **J-A-10 DEATH REVIEW**

7    **J-C-01 CREDENTIALS**

8    **J-D-02 MEDICATION SERVICES**

9    **J-E-02 RECEIVING SCREENING**

10   **J-E-11 NURSING ASSESSMENT PROTOCOLS**

11   **J-G-06 INTOXICATION AND WITHDRAWAL**

12

13   The applicable NCCHC Position Statement applicable to the Ivey matter is Charging

14   Inmates a Fee for Health Care Services. ncchc.org/filebin/Positions/Charging-Inmates-a-Fee-for-Health-Care-

15   Services-2017.pdf

16

17   **DETAILED SUMMARY OF EVENTS**

18   **ARREST: July 20, 2016, 09:49, Wednesday**
19

20   **D. J. Dalton, #296, Missouri State Highway Patrol**

21   Mark Ivey was arrested in Laddonia, Missouri, on Route 19, 30 miles off Route 70, about

22   70 miles from St. Louis. Mark Ivey had been at the Fast Lane Gas Station and Convenience

23   Store for nearly an hour and was overly nervous. Mark Ivey had apparently driven to that

24   location and left his car blocking traffic for the convenience store. Mark Ivey stated he had been

25   visiting in Arnold, Missouri which is a southern suburb of St. Louis, two hours out of the way

26   from Laddonia, Missouri taking multiple different highways.

27   D. J. Dalton, #296, Missouri State Highway Patrol arrested Mark Ivey who was acting

28   suspicious and was fecally incontinent. Mark Ivey stated he spent the night at a friend's house

29   in Arnold, Missouri and was trying to get home in Saint Louis. Mark Ivey said he had panic

8

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   attacks sometimes but was not on any medication. Ivey failed or had difficulty performing

2   several field sobriety tests given by D. J. Dalton #296. Mark Ivey would attempt to answer the

3   question but was unable to finish a complete sentence without talking about something else.

4          During an initial search of Mark Ivey's car there was a black bag next to the driver's seat

5   which contained a dirty white rock-like substance which field-tested positive for cocaine, a pill

6   container with oval pink pills and a blue round pill identified as amphetamine, and 3 U. S. bills,

7   all with white residue on them. In a later search by David Ivey, multiple inhalers were found in

8   the vehicle. Ivey dep p48

9          Missouri State Police records documented that Mark Ivey had been hospitalized once in

10   the past year for breathing problems. 280, 2/6 MSP arrest record Missouri State Police medical

11   questioning documented that Mark Ivey had asthma and used albuterol twice daily as needed.

12   281, 3/8 MSP arrest record

13          The Missouri State Police arranged for an Audrain County Ambulance to transport Mark

14   Ivey to the SSM Health, Audrain Emergency Room, in Mexico, Missouri for medical clearance

15   and a Fit for Confinement letter.[1]

16

17                    **AUDRAIN EMERGENCY ROOM, MEXICO, MISSOURI**

18   **Kim J. Rettenmaier, MD Physician**

19   **Jenna Smith, MSW, Psychiatric Central Intake Assessing Provider**

20          Mark Ivey was brought to the emergency room by EMS with law enforcement present

21   and evaluated by Kim J Rettenmaier MD, emergency room physician. Mark Ivey was nervous

22   and short of breath. Mark Ivey had a history of asthma. Mark Ivey denied drug use.

23

24

---

[1] Fit for Confinement is a document produced by a physician after evaluation of a detainee to give information to the jail documenting medical issues and medications to be continued during confinement. This document is the basis for the initial information in J-A-01 ACCESS TO CARE, J-E-11 NURSING ASSESSMENT PROTOCOLS, J-D-02 MEDICATION SERVICES, J-E-02 RECEIVING SCREENING and J-G-07 INTOXICATION AND SCREENING. If a detainee is not considered to be able to be cared for in a jail, he will be treated in the emergency room until fit or hospitalized.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1      Mark Ivey's past medical history included depression, generalized anxiety disorder,

2    unspecified psychosis, asthma and drug abuse including methamphetamine[2] and opiates[3] as

3    well as being a smoker. Mark Ivey had previously been seen in the emergency room in St. Louis

4    with paranoia and anxiety. Mark Ivey had several negative drug screens since January.

5      Mark Ivey's review of systems showed that he was positive for being short of breath.

6      Mark Ivey's vital signs were 131/89, pulse rate 113, temperature 97.0°F, respiratory rate

7    16, oxygen saturation 97%. Mark Ivey's outpatient medications included albuterol[4],

8    hydroxyzine[5], sertraline[6], quetiapine[7] and Xanax[8]. Mark Ivey said he had taken Adderall[9] a few

9    days ago.

10      Mark Ivey's urine drug screen was positive for amphetamines[10] and opiates.

11      Mark Ivey's chest x-ray showed obstructive airway disease[11], bronchial inflammation[12], a

12    patch of lower lobe pneumonic infiltrate[13] was also possible. Mark Ivey's CBC demonstrated a

13    white blood cell count of 9100 and hematocrit of 37.2 [normal]. Mark Ivey's comprehensive

14    metabolic panel showed potassium of 2.9 [Normal 3.5-5.1], BUN 6 [X .4-25.7], globulin 2.5 [2.9-

15    3.3]. All were flagged as abnormal. Mark Ivey's electrocardiogram showed a rate of 102

16    [elevated] but otherwise normal.

17      Kim J Rettenmaier, MD examined Mark Ivey and found him to be oriented to person,

18    place and time. Mark Ivey was unkempt.

19      Kim J Rettenmaier, MD administered 1 L of normal saline intravenously [for

20    dehydration]. Kim J Rettenmaier, MD ordered a handheld nebulizer treatment with DuoNeb[14] to

21    treat Mark Ivey's wheezing related to asthma.

---

[2] A highly addictive, illegal stimulant drug similar to amphetamine.

[3] Heroin and related synthetic heroin like drugs.

[4] Albuterol is a commonly used asthma inhaler.

[5] Hydroxyzine is an antihistamine. This drug can be used for anxiety as well as to help prevent or treat allergic reactions.

[6] Sertraline is an antidepressant.

[7] Quetiapine (Seroquel™) is a drug used for bipolar disorder, schizophrenia and depression.

[8] Xanax (alprazolam) is a drug used for anxiety.

[9] A prescription stimulant drug used for patients with attention deficit disorder and hyperactivity.

[10] Amphetamines are addictive, mood altering drugs used illegally as a stimulant.

[11] Chronic obstructive pulmonary disease.

[12] Bronchitis.

[13] Pneumonia

[14] A commonly used drug for chronic obstructive pulmonary disease and asthma.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1  Kim J Rettenmaier, MD ordered Jenna Smith, MSW, Psychiatric Central Intake
2  Assessing Provider to perform a mental health consultation on Mark Ivey. MSW Smith found
3  that Mark Ivey had a precipitating event of anxiety and was found wandering around and in and
4  out of the gas station for approximately an hour before law enforcement was called and
5  transported him to the ED. Mark Ivey denied suicidal ideation, past attempts or self-injury. Mark
6  Ivey denied homicidal ideation or aggressive behavior.

7  Mark Ivey appeared fearful, tearful and anxious. Mark Ivey exhibited strong body odor
8  and was disheveled with matted hair.

9  While Mark Ivey denied a history of substance abuse or substance abuse treatment his
10  drug screen was positive for amphetamines and opiates. Mark Ivey reported no sexual abuse
11  until the sexual predators started stalking him approximately four years ago. Mark Ivey was
12  confused, paranoid, anxious, distracted and fearful. Mark Ivey appeared anxious, distracted and
13  fearful. Mark Ivey's speech was fragmented.

14  Jenna Smith, MSW, Psychiatric Central Intake Assessing Provider concluded that Mark
15  Ivey was suffering from substance abuse. Her conclusions were relayed to nursing and then
16  Kim J Rettenmaier, MD.

17  Kim J Rettenmaier, MD documented her clinical impression that Mark Ivey had anxiety,
18  wheezing and mixed or nondependent drug abuse. Kim J Rettenmaier, MD noted that Mark
19  Ivey's urine drug screen was positive for amphetamine and opiates. Kim J Rettenmaier, MD
20  questioned Mark Ivey who said he took an Adderall a few days ago and again denied drug use.
21  Kim J Rettenmaier, MD concluded that Mark Ivey was okay to be discharged and was Fit for
22  Confinement. [15]

23  Mark Ivey received written information on his medications. Mark Ivey was told the action
24  of his medications, the reason for taking them, the side effects, the signs of allergic reaction and
25  when the doctor should be called. It was reinforced to Mark Ivey that his medications should be
26  taken exactly as the doctor prescribed.

27

28  Kim J Rettenmaier, MD authored a FIT FOR CONFINEMENT letter: [MR90]
29

---

[15] Fit for Confinement is a release given by an Emergency Room to detainees who are then released to a jail which doesn't have the same medical expertise, medical testing or medications available in the Emergency Room.

11

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   *To Whom It May Concern: this is to certify that Mark Ivey was seen in the Emergency*
2   *Department on 7/20/2016.*
3
4   *He is found to be fit for confinement on 7/20/2016.*
5
6   *The patient needs to take the following medications while being held in confinement:*
7
8   *1. Albuterol HFA (Proventil; Ventolin; ProAir) inhale two puffs by mouth every four*
9      *hours as needed for shortness of breath or wheezing.*
10  *2. Hydroxyzine 25 mg. Take one tab by mouth every six hours as needed (anxiety)*
11     *sertraline 100 mg. Take 1.5 [150 mg] by mouth once daily [he ran out of this weeks*
12     *ago and the medication was last filled in June 2015].*
13  *3. Quetiapine (Seroquel) 200 mg. 300 mg at bedtime. Patient was previously taking.*
14     *States he ran out weeks ago. His pharmacy states this med was last filled in July*
15     *2015.*
16  *4. Alprazolam (Xanax) 0.5 mg tablets, one tablet by mouth twice daily as needed for*
17     *anxiety.*
18
19  *Please feel free to contact the Emergency Department if you have any questions or*
20  *concerns. Thank you for your assistance in this matter.*
21
22  *Sincerely,*
23
24  *Kim J Rettenmaier, MD*
25
26
27
28  **BOOKING, DETENTION AND DEATH AT THE AUDRAIN COUNTY JAIL**
29  **Stephanie Hildebrand LPN, booking nurse, Licensed Medical Provider** NCCHC J-A-02
30  **Shawndra Brown-Foote, MD, Responsible Physician** NCCHC J-A-02
31
32  Wednesday, July 21, 2016. 00:35
33      Mark Ivey was booked into the Audrain County Jail for Driving While Intoxicated (Drugs),
34  two (2) counts of Possession of a Controlled Substance, and Unlawful Use of Drug
35  Paraphernalia. [Jensen 70/177, Williams 64, 65/177]
36
37

12

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   July 21, 2016, 03:32

2       Mark Ivey vomited on the floor. [White 68/177, night shift log 82/177]

3

4   July 21, 2016. 05:52

5       Mark Ivey vomited and had fecal incontinence. [Atkinson 66/177, Jensen 70/177]

6

7   July 21, 2016, 05:52

8       Mark Ivey vomited on the floor again. His body was stiff, and he started to slide off the

9   bench. Officer Atkinson and Deputy Jensen went into the cell and asked if Mark Ivey needed

10  medical attention and he said no. Mark Ivey had also had fecal incontinence and needed a

11  shower. [White 68/177, Atkinson 66/177]

12

13  July 21, 2016, 05:52

14      Mark Ivey was shaking and appeared to be having a seizure. Mark Ivey took multiple

15  attempts to be able to respond. Officer Atkinson asked if Mark Ivey wanted medical attention

16  and he declined medical attention. Mark Ivey had once more vomited on the floor. Mark Ivey

17  had also had fecal incontinence. [Jensen 70/177]

18

19  July 21, 2016. 05:56

20      Capt. Williams and Stephanie Hildebrand, LPN were informed at 07:00 about the

21  vomiting, fecal incontinence, and seizure. White dep p. 21 Stephanie Hildebrand, LPN did not inform

22  Shawndra Brown-Foote, MD about the fecal incontinence or the seizure. Hildebrand dep pp. 54-55, 157-158

23

24  Wednesday, July 21, 2016. Approximately 07:00

25      The nurse, Stephanie Hildebrand. LPN, arrived at 07:00 and performed Receiving

26  Screening.J-E-02-03 Mark Ivey informed nurse Hildebrand that he was withdrawing from heroin and

27  Xanax.[16] Mark Ivey informed Stephanie Hildebrand, LPN that he was not allergic to any

28  medications. Stephanie Hildebrand, LPN received and read the FIT FOR CONFINEMENT letter

29  from the Audrain County Emergency Room. Hildebrand dep p. 32

---

[16] Xanax (alprazolam) a drug prescribed for anxiety, also used to counter act methamphetamine side effects.

13

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1    Stephanie Hildebrand, LPN called Shawndra Brown-Foote, MD and discussed the Fit for

2    Confinement letter. Stephanie Hildebrand, LPN testified that she told Shawndra Brown-Foote,

3    MD about the medications that the Fit for Confinement letter stated were to be continued upon

4    confinement. Shawndra Brown-Foote, MD, instead ordered Bentyl 20 mg[17], Haldol 5 mg[18] and

5    Cogentin 1 mg[19]. Shawndra Brown-Foote, MD ordered none of the medications that the Fit for

6    Confinement letter documented that Mark Ivey required during confinement.

7    The MAR[20] showed that only one dose of haloperidol 5 mg was given at 10:45 on

8    7/21/16. One mg benztropine and dicyclomine 20 mg were given at the same time. [Audrain County

9    Incident Report 92/177]

10    After Mark Ivey received the Haldol he then told Stephanie Hildebrand, LPN that he was

11    allergic to Haldol. Mark Ivey replied that "it will be okay". Stephanie Hildebrand, LPN then

12    telephoned Shawndra Brown-Foote, MD once more and Shawndra Brown-Foote, MD placed

13    Mark Ivey on 15-minute checks for two hours.

14

15    July 21, 2016. 17:00

16    Mark Ivey had vomited once more on the floor. [Jensen 70/177, Brink 72/177]

17

18    July 21, 2016. 19:00

19    Mark Ivey was in the padded suicide holding cell [all the other holding cells were full at

20    the time]. He was mostly laying on the bench in his R-6 single cell. Occasionally he would drink

21    water.

22

23    July 21, 2016. 20:50 until 03:00 on July 22, 2016

24    Custody officers periodically checked Mark Ivey physically every hour and from 23:00

25    until 03:00 on the camera at different intervals. [Jensen 71/177]

26

---

[17] Bentyl is a drug for intestinal spasms associated with heroin withdrawal.

[18] Haldol (haloperidol) is a drug for delirium and psychosis. This is heavy dose.

[19] Cogentin (benztropine) is a drug used in this circumstance to counteract side effects of Haldol.

[20] MAR is the medication administration record which is maintained by nursing to show what medications are given and when.

14

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

1  July 22, 2016. 01:51 [note that some of the following times seem inconsistent but are related to

2  the time that the report was written, not the event]

3         A physical check [21] showed no problems. [Jensen 71/177]

4

5  July 22, 2016. 02:57

6         Mark Ivey appeared pale in color and did not respond. The cell door was opened, his

7  body appeared pale and stiff. Mark Ivey was not breathing. An ambulance was requested, Capt.

8  Williams was contacted. Cardiopulmonary resuscitation was accomplished.

9

10  July 22, 2016. 03:00

11         Deputy White was doing a watch tour, standing in front of holding cell R-4 for an

12  extended period of time. Mark Ivey was laying on his bed on his back with his arms to his chest

13  and legs separated. He appeared to be pale in color. Deputy White found that Mark Ivey was

14  unresponsive. [Jensen 71/177]

15

16  July 22, 2016. 03:00

17         Mark Ivey did not have a pulse. [Jensen 71/177]

18

19  July 22, 2016. 03:05

20         AED advised "No Shock". [Jensen 71/177]

21

22  July 22, 2016. 03:09

23         An AED was placed on Mark Ivey. CPR was continued until 03:12 when Audrain County

24  Ambulance arrived and took over CPR. [White 69/177]

25

26  July 22, 2016. 03:25

27         The ambulance left Audrain County Jail to Audrain Emergency Room.

28

29

30

---

[21] Physical checks are when a deputy looks through the cell window at the inmate. [White dep p. 26]

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   July 22, 2016. 03:35

2        The ambulance arrived at the Audrain Emergency Room, Mark Ivey was still

3   unresponsive.

4

5   July 22, 2016. 03:46

6        Mark Ivey was pronounced dead.

7

8   July 22, 2016. 04:00

9        Audrain County Coroner, Todd Yeager, arrived at the SSM Health, Audrain Emergency

10  Room and Mark Ivey's body was released at 04:15.

11

## 12  OPINIONS

13

14       My Opinions are all stated to a reasonable degree of Medical Certainty.

15

16

## 17       COUNT ONE: STANDARD OF CARE, NEGLIGENCE, WRONGFUL DEATH

18

19       1.      Stephanie Hildebrand, LPN violated the Standard of Care and abrogated her

20  duty as the sole nurse and medically trained person at the Audrain County Jail when she never

21  medically screened Mark Ivey subsequent to the order from Shawndra Brown-Foote, MD at

22  11:07 ^ACJ 102 to check on Mark Ivey every 15 minutes for two hours.  Stephanie Hildebrand, LPN

23  recorded that Mark Ivey was too ill for her to screen initially because he was vomiting and went

24  to his cell. Stephanie Hildebrand, LPN had a second opportunity to screen Mark Ivey when she

25  administered medications to him, but again failed to medically screen him for any condition,

26  including asthma, and failed to assess his lung function. Hildebrand dep pp. 82-83 At no point did

27  Stephanie Hildebrand, LPN ever attempt to assess Mark Ivey's lung function. Hildebrand dep pp. 82-84

28  Stephanie Hildebrand, LPN admitted she never told Shawndra Brown-Foote, MD about Mark

29  Ivey's fecal incontinence. Hildebrand dep p. 55

30       Stephanie Hildebrand, LPN knew that the Fit for Confinement letter required continuation

31  of albuterol and knew or should have known that albuterol was for asthma. Stephanie

16

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   Hildebrand, LPN relied on custody, watching on a video monitor, to determine whether Mark

2   Ivey was having symptoms from asthma. But Stephanie Hildebrand, LPN did not train custody

3   to recognize whenever someone is experiencing an asthma attack. Atkinson dep p 38 Stephanie

4   Hildebrand, LPN went home at approximately noon. Stephanie Hildebrand, LPN testified that

5   she told custody to check on Mark Ivey every 15 minutes for two hours. There is no record or

6   testimony other than that of Stephanie Hildebrand, LPN corroborating that order. After Mark

7   Ivey's death Stephanie Hildebrand, LPN wrote a note asking Officer Kitt for copies of notes on

8   every 15-minute checks times two hours. No notes by officers were found. Jail Med File

9       2.      As a result of the actions of Stephanie Hildebrand, LPN Mark Ivey was never

10  evaluated, treated or referred for asthma and died a preventable death in the Audrain County

11  Jail.

12      3.      Shawndra Brown-Foote, MD violated the Standard of Care and abrogated her

13  duty as the Responsible Physician of Stephanie Hildebrand, LPN during the detention of Mark

14  Ivey at the Audrain County Jail.  Missouri State regulations and Advanced Correctional

15  Healthcare, Inc. as well as the Audrain County Jail charged Shawndra Brown-Foote, MD with

16  oversight and final medical authority for medical care. Shawndra Brown-Foote, MD did not even

17  countersign her orders to Stephanie Hildebrand, LPN.

18      Shawndra Brown-Foote, MD gave one dosing of medications for Mark Ivey's heroin

19  withdrawal.  Shawndra Brown-Foote, MD violated the Standard of Care when she did not

20  subsequently order heroin withdrawal medications that were medically necessary for Mark Ivey

21  even though there is continuing documentation from Deputies that Mark Ivey continued to vomit

22  and soil himself with feces.

23      Shawndra Brown-Foote, MD violated the Standard of Care when she never ordered

24  asthma medication, an albuterol inhaler, that was medically necessary for Mark Ivey. Shawndra

25  Brown-Foote, MD did not order subsequent evaluation and follow-up of Mark Ivey after the initial

26  two hours, every 15-minute observation.

27      4.      As a result of Shawndra Brown-Foote, MD's violations of the Standard of Care,

28  Mark Ivey was never evaluated or treated for asthma and died.  Shawndra Brown-Foote, MD,

29  like any other responsible physician in a similar circumstance could either treat Mark Ivey with

30  an asthma inhaler that he could keep with him, provide him with an asthma inhaler through

31  Deputies, or refer him to a higher level of care. Shawndra Brown-Foote, MD did nothing to treat

32  or evaluate Mark Ivey's asthma.

17

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

1    **COUNT TWO: WITHHOLDING AND DENIAL OF CARE, DELIBERATE**
2    **INDIFFERENCE**
3
4    Asthma is a serious medical condition. Mark Ivey had a history of asthma. Stephanie
5    Hildebrand, LPN and Shawndra Brown-Foote, MD testified that they were aware the Fit for
6    Confinement letter required Mark Ivey to be given an albuterol inhaler and therefore had actual
7    knowledge of his objectively serious medical needs related to his asthma.
8    Narcotic withdrawal is a serious medical condition. Mark Ivey had a history of drug
9    abuse. Stephanie Hildebrand, LPN and Shawndra Brown-Foote, MD testified that they were
10   aware of Mark Ivey's withdrawal symptoms and therefore had actual knowledge of his serious
11   medical needs related to narcotic withdrawal.
12
13       5.       Stephanie Hildebrand, LPN, Shawndra Brown-Foote, MD, Advanced Correctional
14   Healthcare, Inc. and the Audrain County Jail were deliberately indifferent to Mark Ivey's serious
15   and potentially life-threatening medical conditions of asthma as well as narcotic withdrawal.
16   Mark Ivey suffered in the Audrain County Jail without access to the treatment for his serious
17   medical condition that anyone on the street would have had in their possession, an asthma
18   inhaler.
19       •    Advanced Correctional Healthcare, Inc. trained its doctors and nurses that
20            medications required by a detainee's Fit for Confinement letter were
21            recommendations. Ash dep p. 21-24 There is no evidence that Stephanie Hildebrand, LPN
22            and Shawndra Brown-Foote, MD even considered that Mark Ivey required these
23            medications.
24       •    Advanced Correctional Healthcare, Inc. admits Stephanie Hildebrand, LPN should
25            have informed the doctor about Mr. Ivey's seizure and fecal incontinence if she was
26            informed of those conditions by correctional officers. Ash dep p. 56-59
27       •    Advanced Correctional Healthcare, Inc. trained Audrain County Jail officers that
28            heroin withdrawal is not life threatening. Ash dep p. 107
29       •    Audrain County Emergency Room knew that Mark Ivey had asthma and treated him
30            for asthma shortly after his arrest. Kim J Rettenmaier, MD, the emergency room
31            physician, authored a Fit for Confinement letter designating that Mark Ivey required

18

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**
**Cause: 2:17 – CV – 00082 – CDP**
**IVEY v. AUDRAIN COUNTY**
**MATHIS EXPERT REPORT 09/14/2018**

1          albuterol, asthma treatment, during his confinement at the Audrain County Jail.

2     •   Stephanie Hildebrand, LPN knew that Mark Ivey had asthma medication

3          recommended in the Fit for Confinement letter from Kim J Rettenmaier, MD but

4          never evaluated or treated Mark Ivey for asthma.

5     •   There is no evidence that Stephanie Hildebrand, LPN informed deputies who

6          intermittently observed Mark Ivey that he had asthma and according to one Deputy,

7          she never trained them how to recognize when someone was suffering from an

8          asthma attack. Atkinson dep p. 38

9     •   Stephanie Hildebrand, LPN testified that she conveyed the information to Shawndra

10         Brown-Foote, MD that Mark Ivey had asthma and testified that information about the

11         need for the asthma inhaler was given to Shawndra Brown-Foote, MD.

12    •   Shawndra Brown-Foote, MD knew that Mark Ivey required and asthma inhaler and

13         yet deliberately decided not to treat Mark Ivey for asthma or provide the needed

14         asthma inhaler. Shawndra Brown-Foote, MD testified that detainees at the Audrain

15         County Jail are not allowed to have an asthma inhaler on their person. Brown-Foote dep p.

16         44, ln.13 Shawndra Brown-Foote, MD testified that if a detainee needed an asthma

17         inhaler they would just have to ask for it. Brown-Foote dep p. 44, ln. 18 Shawndra Brown-

18         Foote, MD, Responsible Physicián for the Audrain County Jail, testified that she

19         didn't know what the process was to obtain the inhaler, but that it would be available

20         to the detainee. Brown-Foote dep p. 45, ln. 14 Shawndra Brown-Foote, MD testified that she

21         would have to prescribe the inhaler. Brown-Foote dep p. 46, ln. 15 As the Responsible

22         Physician at the Audrain County Jail, Shawndra Brown-Foote, MD could have

23         arranged for the asthma inhaler to be provided but did not.

24    •   Shawndra Brown-Foote, MD, Responsible Physician for the Audrain County Jail,

25         relied on Stephanie Hildebrand, an LPN, to assess how Mark Ivey was breathing,

26         take a stethoscope and place it on the lung fields to ask the person to take a deep

27         breath in and out. Brown-Foote dep p. 15 Shawndra Brown-Foote testified that she instructed

28         nurses at the jails to check for wheezing and aeration on patients that have asthma.

29         Brown-Foote dep p. 16 Shawndra Brown-Foote, MD testified to these physical examination

30         skills even though these skills are outside the expertise and license of an LPN and

31         did not have verbal or written orders as required by the Missouri LPN Scope of

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1  Practice.  Shawndra Brown-Foote, MD, Responsible Physician for the Audrain

2  County Jail did not cosign, as the authorized prescriber, delegated acts needed by

3  Stephanie Hildebrand, LPN. MO LPN Scope of Practice There is no evidence that Stephanie

4  Hildebrand, LPN or ACH had assured appropriate oversight or that Stephanie

5  Hildebrand, LPN possessed the ability to competently perform lung examination. MO

6  LPN Scope of Practice

7  • Shawndra Brown-Foote, MD knew that Mark Ivey had asthma but never evaluated or

8  treated Mark Ivey for asthma.

9  • Shawndra Brown-Foote, MD, Responsible Physician and Advanced Correctional

10  Healthcare, Inc., Responsible Health Authority had no Protocol for inmates with

11  asthma. NCCHC J-E-11

12  • Shawndra Brown-Foote, MD testified that she learned about the policies of the jail

13  "kind of as they came up". Brown-Foote dep p. 49, ln. 16 Shawndra Brown-Foote, MD testified

14  that she would usually ask the nurse first. Brown-Foote dep p. 49, ln. 18 If the nurse didn't

15  know, then Shawndra Brown-Foote, MD would talk with whoever was the jail

16  administrator. Brown-Foote dep p. 49, ln. 20 "So that's kind of how I figure out the policies the

17  jail". Brown-Foote dep p. 49 Shawndra Brown-Foote, MD as Responsible Physician had a

18  duty to understand and implement her final authority at Audrain County Jail regarding

19  clinical issues but breached that duty, was unaware and irresponsible. NCCHC J-A-02

20  Stephanie Hildebrand, LPN and Shawndra Brown-Foote, MD knew about Mark Ivey

21  withdrawing from heroin and methamphetamine. NCCHC J-A-02 Stephanie Hildebrand,

22  LPN and Shawndra Brown-Foote, MD knew that Mark Ivey had recurrent vomiting.

23  Deputies were aware and had to shower and clean up after Mark Ivey who had fecal

24  incontinence.  Shawndra Brown-Foote, MD provided initial treatment with a

25  medication for bowel spasms, dicyclomine, a medication for psychosis, haloperidol,

26  and even a medication to counteract possible reaction from haloperidol, Cogentin.

27  But that was the only treatment, with no subsequent treatment for withdrawal, even

28  though Mark Ivey continued to vomit and soil himself due to coming off heroin. NCCHC J-

29  G-06 The failure to provide subsequent treatment or evaluation for Mark Ivey's serious

30  withdrawal symptoms constitutes gross incompetence and completely inadequate

31  care.

20

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1     •   Shawndra Brown-Foote, MD, documented that she had been trained in opiate
2       withdrawal protocol as of 10/29/15 Corrections Environment and yet she willfully determined
3       not to continue opiate withdrawal treatment for Mark Ivey, which lead to his death.
4     •   Shawndra Brown-Foote, MD, Responsible Physician and Advanced Correctional
5       Healthcare, Inc., Responsible Health Authority, had no specific Protocol for Heroin
6       Withdrawal. NCCHC J-G-06, Brown-Foote dep p. 35, ACJ Intoxication & Withdrawal There was a Policy in
7       place that "the jail physician has approved specific monitoring and treatment
8       protocols for all detainees that are under the influence of alcohol and/or drugs or
9       undergoing withdrawal". ACJ Intoxication & Withdrawal Yet Mark Ivey was not specifically
10      monitored, Stephanie Hildebrand, LPN worked only in the mornings and left soon
11      after she saw Mark Ivey for the first and only time. There was no treatment Protocol
12      in place for Stephanie Hildebrand, LPN or Deputies to follow. And furthermore, in
13      violation of the existing Policy, Mark Ivey was not in "control of normal bodily
14      functions" with repeated vomiting and diarrhea documented by Stephanie
15      Hildebrand, LPN as well as Deputies. The Policy referred to "detainees at risk for
16      progression to more severe levels of intoxication or withdrawal are kept under
17      constant observation by the medical and correctional staff". Mark Ivey was never
18      under constant observation by the only Audrain County Jail staff on site, Stephanie
19      Hildebrand, LPN or Deputies. Stephanie Hildebrand, LPN never provided any
20      patient education to Mark Ivey and never even asked him his inhaler or asthma
21      symptoms. Hildebrand dep p. 75 Had there been a simple questioning, Mark Ivey who was
22      mentally ill and withdrawing from heroin would more likely than not stated that he
23      needed his asthma inhaler.
24     •   Stephanie Hildebrand, LPN, Shawndra Brown-Foote, MD, Advanced Correctional
25      Healthcare, Inc., and the Audrain County Jail charged Mark Ivey for medical care
26      and drugs for heroin withdrawal. Mark Ivey had $70 in his possession at the time of
27      his arrest. His necessary medications, designated in the Fit for Confinement letter,
28      cost more money than he had and placed an undue burden on him denying his
29      Access to Care. NCCHC Charging Inmates a Fee for Health Care Services
30     •   Advance Correctional Healthcare, Inc. and the Audrain County Jail contracted for a
31      "licensed, practical nurse" who required direct and immediate oversight by a

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018**

1   physician who was available by telephone or came to the facility once weekly. ACH
2   contract A Registered Nurse, RN, would be licensed by the State of Missouri to
3   independently evaluate patients. But Stephanie Hildebrand, an LPN, was not.
4   Stephanie Hildebrand, LPN required constant access to Shawndra Brown-Foote, MD
5   who only came into the jail on Thursdays or was available by telephone. Additionally,
6   hiring an LPN rather than an RN saved ACH approximately $25,000 yearly. RN US
7   Median Pay, LPN US Median Pay, ACH contract

8   • Shawndra Brown-Foote, MD never ordered Stephanie Hildebrand, LPN to follow up
9     by telephone call after the two-hour observation.

10  • Shawndra Brown-Foote, MD never ordered asthma evaluation.

11  • Stephanie Hildebrand, LPN did not convey to the officers at the Audrain County jail
12    that Mark Ivey needed to be observed for asthma.

13  • Stephanie Hildebrand, LPN told officers "if they are having breathing problems, give
14    them the inhaler" White dep p. 32 But she never trained them how to recognize when
15    someone was suffering from an asthma attack. Atkinson dep p. 38

16  • Mark Ivey was to be observed every 15 minutes for two hours. There is no evidence
17    that this was accomplished except that he was on a monitor that was intermittently
18    observed.

19  • Stephanie Hildebrand, LPN and Shawndra Brown-Foote failed to place Mark Ivey
20    under medical observation on the night he died. Jensen dep pp. 21-22, White dep p. 30

21  • Stephanie Hildebrand never observed Mark Ivey on the monitor or physically
22    observed Mark Ivey in the medical observation cells.

23  • The officers who were tasked to medically observe Mark Ivey could not assess Mark
24    Ivey for asthma over a television monitor. Mark Ivey would have had to summon the
25    officers, but did not while suffering from his mental illness, heroin withdrawal and
26    asthma.

27  • Audrain County and ACH's stated policy that detainees are never allowed to have
28    their inhaler on their person is deliberately indifferent to the medical needs of
29    detainees. Asthma can be a serious and life-threatening condition and requires
30    immediate access to treatment when attacks occur. Therefore, the complete refusal
31    to allow detainees to possess their inhaler is deliberately indifferent to their serious

22

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION
Cause: 2:17 – CV – 00082 – CDP
IVEY v. AUDRAIN COUNTY
MATHIS EXPERT REPORT 09/14/2018

1          medical needs.

2          • Finally, Advanced Correctional Healthcare, Inc. does not investigate when a patient

3            dies in their care, Ash dep p. 25-26, NCCHC J-A-10 further demonstrating indifference to Mark

4            Ivey and inmates at the Audrain County Jail.

5

6          **COUNT THREE: CAUSATION**

7          6.          Mark Ivey was a pretrial detainee at the Audrain County Jail who suffered

8     serious medical problems including heroin withdrawal and asthma. Both conditions were

9     medically treatable, both in or out of jail. Mark Ivey was locked in a cell, unable to treat himself

10    and had no medical or custody support for treatment.

11         It is medically certain that Mark Ivey would have survived his asthma episode with a

12    readily available inhaler that he had with him upon arrest and could have been given by

13    Stephanie Hildebrand, LPN or Shawndra Brown-Foote, MD. If Mark Ivey could not respond to

14    an inhaler, he could have been treated by the Emergency Medical System (EMS) that could

15    have provided advanced airway support. Mark Ivey could have been transferred to the

16    emergency room where he had been treated the night before with a nebulizer treatment. If the

17    nebulizer treatment was inadequate, Mark Ivey could have been intubated, placed on a

18    ventilator and admitted to the intensive care unit.

19         Instead, Mark Ivey died a completely preventable death from asthma MI Autopsy because

20    Stephanie Hildebrand, LPN and Shawndra Brown-Foote, MD violated the Standard of Care,

21    were deliberately indifferent, and did not treat Mark Ivey for asthma while he was locked in a jail

22    cell without medical oversight and intermittently watched on a video monitor by Deputies with

23    little or no medical training.

24

25         Fact Discovery is complete. However, should more documents come into evidence my

26    Opinions may to change. I reserve the right to make changes in my Report and Opinions.

27

28    Signed,

29

30    *David M Mathis, MD LLC*

31    **David M Mathis, MD CCHP-P FAAFP**

23