UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DAVID IVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17 CV 82 CDP |
| ) | |
| AUDRAIN COUNTY, et. al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Mark Ivey died a day and a half after being confined to the Audrain County jail. His father, David Ivey, brings this suit under 42 U.S.C. § 1983 alleging that the defendants – jail officials and jail medical providers – were deliberately indifferent to Mark Ivey's serious medical needs. He also brings claims against Audrain County, and he brings state-law medical negligence claims against the medical providers.

Mark Ivey ("Ivey") suffered from asthma and mental health issues and was withdrawing from several controlled substances when he was admitted to the jail. He had initially been taken to the hospital by the arresting officers; he was only admitted to the jail after hospital personnel issued a "fit for confinement" letter indicating, among other things, that he needed an albuterol inhaler every four hours

as needed for shortness of breath or wheezing. He died during his second night at the jail, and the coroner ruled that he died of acute asthma exacerbation.

The government defendants are Audrain County and jail guards Nathanael Atkinson, Richard White and Nicholas Jensen. The three guards were on duty both nights that Ivey was in the jail. The medical defendants are Advanced Correctional Healthcare, Inc., which provides medical services at the jail, and its employees Dr. Shawndra Brown-Foote and nurse Stephanie Hildebrand.

Numerous factual disputes remain regarding what each defendant knew and what each defendant did about Ivey's medical condition before his death. Disputes also exist about Ivey's cause of death. I will grant summary judgment to Audrain County and Advanced Correctional Healthcare on only the claims that the jail medical policies were deficient, but the claims against both defendants regarding their failure to adequately train the jail guards on medical issues remain. I will deny the pending motions for summary judgment in all other respects, both on the merits and on the correctional officers' arguments for qualified immunity. I will deny without prejudice plaintiff's motion to preclude one of defendant's expert witnesses from testifying to a different cause of death, as at least one part of her proposed testimony appears to be admissible. The case remains set for jury trial on August 12, 2019 in Hannibal.

## **Legal Standards**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). I must view the evidence in the light most favorable to plaintiff (the nonmoving party) and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007). Where sufficient evidence exists to support a factual dispute, a jury must resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

To establish a claim under 42 U.S.C. § 1983 based on deliberate indifference to serious medical needs a plaintiff must demonstrate an objectively serious medical need and that each defendant had actual knowledge of that need but deliberately disregarded it. *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). A medical need is objectively serious if it has been diagnosed by a physician or "if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (*quoting Jackson v. Buckman,* 756 F.3d 1060, 1065 (8th Cir. 2014)). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health."

3

*Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). Whether a serious medical need exists and whether an official was deliberately indifferent to it are questions of fact. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

A county such as Audrain County may be liable under § 1983 where an unconstitutional policy has led to the deprivation of a plaintiff's civil rights as well as where its failure to train or supervise its employees leads to the deprivation of rights. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). Where a private actor, such as Advanced Correctional Healthcare, is a willing participant in a "joint action with public servants acting under color of state law," it can be liable along with the county or municipality. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999).

Contracting out prison medical care does not discharge government of its constitutional obligation to provide suitable medical care to those in its custody. *West v. Atkins*, 487 U.S. 42, 56 (1988). Private doctors who provide medical services to detainees, even on a part-time basis, act under color of law for § 1983 purposes. *Estate of Schwartz v. Assisted Recovery Centers of Am., LLC*, No. 4:16 CV 673 JMB, 2017 WL 840542, at *6 (E.D. Mo. Mar. 3, 2017).

## Facts

It is undisputed that when Mark Ivey was arrested at a convenience store he was acting strangely, had defecated on himself, and was under the influence of

4

heroin, methamphetamine, fentanyl and methadone.  At the emergency room a doctor concluded that he had normal vital signs and normal respiratory effort but had wheezes.  He was diagnosed with asthma and drug intoxication and was given a nebulized treatment of albuterol to clear his lungs.  The fit for confinement letter issued by the hospital stated that Ivey needed albuterol (two puffs every four hours as needed for shortness of breath or wheezing), Atarax and Xanax (as needed for anxiety), and Zoloft and Seroquel (the letter also said that these two medications had not been refilled for a year, based on pharmacy records).

The first night at the jail Ivey vomited twice and defecated on himself once.  One of the guard defendants monitoring the cell video also saw what he described as seizure-like movements and stated that Ivey appeared stiff and started to slide off the bench.  When asked, Ivey told the guards he did not need medical attention; his cell was cleaned and he was given a shower.  No medical personnel were notified of these events that night.

The next morning nurse Hildebrand saw Ivey; she noted the fit for confinement letter and his heroin use within the last two days.  The medical intake questionnaire noted that he had anxiety, asthma and breathing problems and had been hospitalized in the last year.  She noted in her records that Ivey complained of cramping, nausea, vomiting two times, decreased appetite, and one loose stool.  She and the guard defendants disagree about whether she was told of the seizure-

5

like movements and that Ivey had defecated on himself. She concluded that his symptoms were the early stages of drug withdrawal. She testified that Ivey did not have wheezing or shortness of breath, but what happened with regard to checking his lungs is disputed. Nurse Hildebrand contacted Dr. Brown-Foote, told her of the fit for confinement letter and reported on her exam. The doctor did not issue an order for albuterol. The jail keeps albuterol on hand and jail officials testified that they can administer medications listed on a fit for confinement letter even if not ordered by a jail nurse or doctor.

The next night Ivey vomited on the floor of the cell again. Defendants again cleaned his cell; Ivey showered and ate his dinner meal and was assessed by a mental health professional who noted that he was likely withdrawing from drugs. At 2:03 a.m., the video shows Ivey suddenly having seizure-like movements for two and a half minutes. At 3:00 a.m. one of the guards noticed on the video that he was pale and not moving and went to check on him; he then began to administer CPR. Ivey was pronounced dead at 3:46 a.m. after he had been transported to the hospital.

Plaintiff points to several jail policies that he contends caused harm to Ivey. Detainees are not allowed to keep inhalers in their cells or on their persons. Officers do not have to notify medical personnel unless a detainee has more than one seizure or has a seizure that lasts longer than five minutes. The policy

6

regarding drug withdrawal states that detainees who are at risk for progression to severe levels of withdrawal may be kept in jail under constant observation by the medical and correctional staff.[1]  A health assessment does not need to be performed for up two weeks after a detainee enters the jail.

Nurses or other Advanced Correctional Healthcare personnel are responsible for training correction officers regarding medical issues.  Whether the training is adequate on various topics remains disputed.  Those disputes include the sufficiency of training on when a detainee should be sent to the hospital, how to recognize withdrawal symptoms, when to inform medical personnel if a detainee vomits or defecates on himself, and how to recognize if a detainee is experiencing an asthma attack, among others.

## **Discussion**

Genuine disputes exist in this case regarding whether defendants were deliberately indifferent to Ivey's serious medical needs.  Both asthma and drug withdrawal can constitute objectively serious medical needs.  *See Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018) (asthma); *Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1184 (N.D. Cal. 2017) (withdrawal); *Foelker v. Outagamie Cty.*, 394 F.3d 510, 513 (7th Cir. 2005) (withdrawal).  The corrections officers knew of Ivey's asthma because the fit for confinement letter stated he

---

[1] Defense witnesses testified that despite this policy it is not possible to keep any inmate under "constant" observation.

needed his inhaler and their intake questionnaire also stated he had asthma. Nurse Hildebrand and Dr. Brown-Foote should have been aware of the asthma diagnosis for the same reason. There is a dispute of fact regarding the medical exam that Nurse Hildebrand performed and the lack of an assessment for asthma. The correctional officers and the medical personnel disagree about whether they informed the nurse about the seizure or seizure-like movements that they observed, but there is no dispute that this could be a severe consequence of withdrawal and a serious medical need that should have been addressed. These issues are appropriate for a jury to determine.

Circumstantial evidence may be used to establish the defendant's mental state for a claim of deliberate indifference and "a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (*quoting Vaughn,* 557 F.3d at 909). Here, there are sufficient facts from which a jury could conclude that all of the individual defendants were aware of a serious medical need and were deliberately indifferent to it.

This disputed evidence also leads to the conclusion that the correctional officers are not entitled to qualified immunity. The facts, if viewed in the light most favorably to the plaintiff, could demonstrate that reasonable officers in

defendants' position would have known that Ivey had a serious medical need. And it is clearly established that a reasonable officer would know that it is unlawful to delay medical treatment for a detainee exhibiting obvious signs of medical distress. *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006). Here, if plaintiff's evidence is believed, a reasonable correctional officer would have realized that Ivey's constitutional rights were violated when his collective symptoms were ignored. *See Barton*, 908 F.3d at 1125 (denying qualified immunity to an officer that failed to provide medical care to an intoxicated arrestee that exhibited "symptoms substantially more severe than ordinary intoxication.").

The parties agree that Advanced Correctional Healthcare developed the medical care policies of the Audrain County jail and that its nurse and other personnel were responsible for training jail guards on those policies. Plaintiff argues that four policies were a moving force behind Ivey's death: the seizure policy, the "withdrawal policy" that says detainees suffering severe withdrawal may remain in the jail if constantly monitored, the asthma policy that prohibits prisoners from possessing an inhaler, and the policy that a health assessment does not need to be performed for up two weeks once a detainee enters the jail. Plaintiffs have not presented evidence from which a reasonable jury could find that these policies are unconstitutional on their faces. A written policy that is facially constitutional but fails to provide detailed guidance that may have prevented a

9

constitutional violation by an employee does not itself create municipal liability. *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 391-92 (8th Cir. 2007). I will grant summary judgment to both Audrain County and Advanced Correctional Healthcare on the claims that their policies deprived Mark Ivey of his constitutional rights.

I reach a different conclusion, however, regarding the claims that Audrain County and Advanced Correctional Healthcare failed to provide adequate training to the jail guards. Plaintiff has presented evidence that the corrections officers were not trained about when to send a detainee to the hospital, how to recognize an inmate was going through withdrawal or how to evaluate the seriousness of that withdrawal, whether or when to inform medical personnel if a detainee vomits or defecates on himself, and how to determine that a detainee is experiencing an asthma attack. This is sufficient for the claims to proceed. *City of Canton*, 489 U.S. at 390.

Finally, the medical defendants move for the dismissal of the claims against them for punitive damages, which I will deny. In § 1983 cases, punitive damages are available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Whether a defendant's conduct meets this standard is a question of fact. *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997).

## Motion to Exclude Testimony of Defendant's Expert

Plaintiff moves to exclude the testimony of Dr. Jane Turner about the cause of Mark Ivey's death. I will deny this motion without prejudice to reconsider this issue at trial. I have serious concerns about whether Dr. Turner's opinion that Ivey's death was caused by "sympathomimetic syndrome" is based on anything other than speculation. Her opinion that asthma was not the cause of death, however, appears to be based on scientific principles reasonably applied because she testified at her deposition that she reviewed autopsy tissue slides that showed "no degranulation of eosinophils." She thus was not relying solely on what she saw on the video, as plaintiff's motion argues.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Audrain County, Nathanael Atkinson, Richard White, and Nicholas Jensen's Motion for summary judgment [82] is granted only as to the claim that Audrain County policies were constitutionally deficient and caused Mark Ivey's death and is denied in all other respects.

**IT IS FURTHER ORDERED** that the Motions for Partial Summary Judgment for Defendant Brown-Foote [86] and Defendant Hildebrand [87] are denied.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment for Defendant Advanced Correctional HealthCare [88] is granted only as to the claim that Audrain County policies were constitutionally deficient and caused Mark Ivey's death and is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion to exclude the testimony of Dr. Jane Turner [93] is denied without prejudice to reconsider at trial whether any part of the proposed testimony should be excluded.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2019.